Benjamin A. RING; George H. Frein, on
his own behalf and on behalf of Mark
Frein, his minor child; Cynthia Hoeks-
tra, on her own behalf and on behalf of
Curtis and Christine Hoekstra, her mi-
nor children; and James McKenzie, on
his own behalf and on behalf of John
and Catherine McKenzie, his minor chil-
dren, Plaintiffs,

v.

GRAND FORKS PUBLIC SCHOOL DIS-
TRICT NUMBER 1, a public corpora-
tion; Dr. Raymond Fischer, Jack Kram-
er, F. John Marshall, Barbara Norby,
Niomi Phillips, Michael Polovitz, Dr. D.
Jerome Tweton, Gerald F. Hammerlik,
in their official capacities as members
of the School Board, Defendants.

Civ. No. A2–79–93.

United States District Court,
North Dakota,
Northeastern Division.

Jan. 28, 1980.

Robert Vogel, Grand Forks, N.D., Steph-
en L. Pevar, American Civil Liberties
Union, Denver, Colo., for plaintiffs.

David Kessler, Grand Forks, N.D., for
amicus curiae American Jewish Congress,
Synagogue Council of America, National
Jewish Community Relations Council; Leo
Pfeffer and Victoria B. Eiger, New York
City, of counsel.

Gary R. Thune, Shaft, McConn, Fisher &
Thune, Grand Forks, N.D., for all defend-
ants.

Murray G. Sagsveen, Sol., Bismarck,
N.D., for State of North Dakota, interve-
nor.

## ORDER

BENSON, Chief Judge.

Plaintiffs in the above entitled action seek declaratory and injunctive relief against the operation and enforcement of North Dakota's Ten Commandments Law, N.D.Cent.Code § 15–47–10. They allege that the statute violates both the Establishment Clause and the Free Exercise Clause in contravention of the First and Fourteenth Amendments of the United States Constitution. The case is now before the court on the parties' cross motions for summary judgment. A hearing on the motions for summary judgment was held on December 11, 1979. At that time the parties agreed that there are no genuine issues of material fact remaining.

Section 15–47–10 of the North Dakota Century Code provides as follows:

The school board of every school district, and the president of every institution of higher education in the state which is supported by appropriations or by tax levies, shall cause a placard containing the ten commandments of the Christian religion to be displayed in a conspicuous place in every schoolroom, classroom, or other place where classes convene for instruction. The superintendent of public instruction may cause such placards to be printed and may charge an amount therefor that will cover the cost of printing and distribution.

The defendants admit that they have complied with the above statute by displaying in each classroom in the School District a copy of a document entitled "The Ten Commandments." The document was printed by the School District and the cost of printing was paid from public funds of the district. The placard used appears as follows:

### THE TEN COMMANDMENTS

*The* first commandment

*You shall have no other gods.*

*The* second commandment

*You shall not take the name of the Lord your God in vain.*

*The* third commandment

*Remember the Sabbath day, to keep it holy.*

*The* fourth commandment

*Honor your father and your mother.*

*The* fifth commandment

*You shall not kill.*

*The* sixth commandment

*You shall not commit adultery.*

*The* seventh commandment

*You shall not steal.*

*The* eighth commandment

*You shall not bear false witness against your neighbor.*

*The* ninth commandment

*You shall not covet your neighbor's house.*

*The* tenth commandment

*You shall not covet your neighbor's wife, or his manservant, or his maidservant, or his cattle, or anything else that is your neighbors.*

The first amendment states that "Congress shall make no law respecting an establishment of religion . . . ." This Establishment Clause is made applicable to the states by the fourteenth amendment. *See Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

To withstand an Establishment Clause challenge, a statute must meet three criteria. It must have a secular legislative purpose, its principal or primary effect must be one that neither advances nor inhibits religion, and it must not foster an excessive government entanglement with religion. *Lemon v. Kurtzman,* 403 U.S. 602, 612–613, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). A statute which fails to meet any one of these requirements is unconstitutional. *See e. g., Meek v. Pittenger,* 421 U.S. 349, 363 n.13, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975).

Plaintiffs and defendants have each provided the court with lengthy treatises on the origin and nature of the Ten Commandments. Defendants contend the Ten Commandments, although biblical in

origin, are the cornerstone of our legal system and thus have become secular in nature. Commandments four through ten of the posted placard express moral precepts which, for the most part, reflect the mores of our society and are reflected in our laws. Standing alone those seven commandments could be construed as secular. The problem the defendants have is that the statute requires a placard containing the Ten Commandments of the *Christian* religion. To comply, defendants must include the first three commandments on the placard. Those three commandments are clearly sectarian and violate the Establishment Clause unless it can be shown that they serve a secular legislative purpose. If the purpose and primary effect of N.D.C.C. § 15–47–10 is to advance or inhibit religion it is in violation of the Establishment Clause. *See Lemon, supra.*

Defendants cite *Anderson v. Salt Lake City Corporation*, 475 F.2d 29 (10th Cir. 1973), *cert. denied*, 414 U.S. 879, 94 S.Ct. 50, 38 L.Ed.2d 124 (1973), as authority for their argument that the placard serves a secular purpose. In that case the city and county had allowed the Order of Eagles to erect a granite monolith on the courthouse grounds. Inscribed on the monolith were the Ten Commandments along with other religious and non religious symbols. The erection of the monolith was challenged as being in contravention of the Establishment Clause.

The court found that the monolith was nothing more than a depiction of a historically important monument with both secular and sectarian effects and that it would be unreasonable to require removal of the monument simply because it reflected the religious nature of an ancient era. 475 F.2d at 34. The court went on to hold that the *monolith* was primarily secular and not religious in character. It did not hold that the *Ten Commandments* were primarily secular. It construed the Ten Commandments as being both religious and secular, *Id.* at 33, but were being presented primarily for their historical significance. It was the secular purpose of the presentation that saved the monolith from a constitutional attack.

Section 15–47–10, N.D.C.C., was originally enacted in 1927 and last amended in 1961. The legislative purpose, though not explicitly expressed in the statute and not expressed in any historical record known to the court, appears to be clear on the face of the statute. That purpose is to display the Ten Commandments of the Christian religion in a conspicuous place in all classrooms. There is nothing more. There is not even a pretense of a secular purpose in the statute or in the defendants' compliance with the statute. In their argument to the court defendants contend the secular purpose is to instill in students the basic mores of civilization and the principles of our common law. If that is the secular purpose, they are making no effort to carry it out because the placard is posted in every classroom without explanation, instruction or program relating to the document. The document is clearly a sectarian religious document and serves no secular purpose. Furthermore, the state is not allowed to use religious means to serve secular ends where secular means would suffice. *Abington School Dist. v. Schempp*, 374 U.S. 203, 281, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (Brennan, J., concurring). If the secular purpose of the document is as defendants contend, they are in effect suggesting that the basic mores of *civilization* are embodied only in the Christian religion. The court does not believe that to be a serious contention.

The statute fails to meet two of the three criteria required to withstand the Establishment Clause challenge. It does not serve a secular legislative purpose and it advances religion. Freedom of religion is one of the most important of the individual rights that have been excluded by our Constitution from control or infringement by the Government. Any infringement, however well intended, takes something away from that aspect of our freedom that may never be recovered. Of even more concern, it serves as a basis for further infringement.

We repeat and reaffirm that neither a State nor the Federal Government can constitutionally force a person 'to profess

a belief or disbelief in any religion.' Neither can constitutionally pass laws or impose requirements which aid all religions as against non-believers, and neither can aid those religions based on a belief in the existence of God as against those religions founded on different beliefs.

*Torcaso v. Watkins,* 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961) at 495, 81 S.Ct. at 1683, 1684.

The Establishment Clause protects religion. "Its first and most immediate purpose rested on the belief that a union of government and religion tends to destroy government and to degrade religion." *Engel v. Vitale,* 370 U.S. 421, 431, 82 S.Ct. 1261, 1267, 86 L.Ed.2d 601 (1962). "[R]eligion is too personal, too sacred, too holy, to permit its 'unhallowed perversion' by a civil magistrate." *Id.* at 432, 82 S.Ct. at 1267.

IT IS ORDERED defendants' motion for summary judgment is denied.

IT IS FURTHER ORDERED plaintiffs' motion for summary judgment is granted.

IT IS FURTHER ORDERED judgment be entered declaring North Dakota Century Code § 15–47–10 to be a violation of the First and Fourteenth Amendments to the Constitution of the United States.